(Not for publication)  (Docket Entry Nos. 164, 186, 200)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | | |
|---|---|---|
| MARS, INC. and MEI, INC., | : | |
| Plaintiffs, | : | Civil No. 05-3165 (RBK/JS) |
| v. | : | **OPINION** |
| JCM AMERICAN CORP. and JAPAN CASH MACHINE CO. LTD., | : | |
| Defendants. | : | |

**KUGLER**, United States District Judge:

On December 23, 2008, the Court dismissed this case without prejudice and ordered that Defendants JCM American Corp. and Japan Cash Machine Co., Ltd. ("Defendants") could recover certain attorney's fees and costs. Presently before the Court are (1) Defendants' Application for Fees pursuant to the Court's December 23 Order and Motion for an Exceptional Case under 35 U.S.C. § 285; (2) Defendants' Motion to Strike the Declaration of Joy M. Stanton; and (3) Defendants' Motion for Rule 11 Sanctions. For the reasons set forth below, Defendants' Application for Fees will be granted in part and denied in part. Defendants' Motion for an Exceptional Case, Motion to Strike the Declaration of Joy M. Stanton, and Motion for Rule 11 Sanctions will be denied.

## I. BACKGROUND

On June 17, 2005, Mars, Inc. ("Mars") filed a complaint against Defendants alleging infringement of U.S. Patent Nos. 5,577,589 ("the '589 Patent") and 6,712,352 ("the '352 patent"). These patents "cover portions of document handlers such as bill validators which may be used in vending machines, gaming machines and other devices requiring validation of paper currency." (Complaint at ¶ 1.) In the complaint, Mars stated that it owned both patents and that Mars Electronics International, Inc. ("MEI") had a license to manufacture and sell devices covered by the patents.

On December 22, 2006, Mars filed a motion pursuant to Federal Rule of Civil Procedure 25(c) to substitute MEI for itself as Plaintiff in this action. Mars reiterated that at the time the suit was filed, it was the record owner of the patents-in-suit and MEI was a subsidiary of Mars licensed to manufacture and sell the bill validators covered by the patents-in-suit. Mars stated that during the pendency of this lawsuit, it sold substantially all of the assets of MEI and assigned to MEI the entire right, title and interest in and to the patents-in-suit. (Document Certification of William J. Hughes, Jr. Ex. 37 at 2.) Defendants opposed Mars' Rule 25(c) motion, arguing in part that Mars did not provide adequate proof of the terms of the sale of MEI. (Id. Ex. 38 at 1.) Because the evidence presented by the parties did not clearly show whether Mars, MEI or a third party currently owned the patents, the Court joined MEI as a party plaintiff, rather than substituting MEI for Mars. (Dkt. No. 81.)

### A. Dismissal of Claims Involving the '352 Patent

On November 2, 2005, JCM filed a request for an *inter partes* reexamination of the '352 patent with the U.S. Patent and Trademark Office. On January 23, 2006, the Patent Office issued

2

an *Inter Partes* Reexamination Communication, in which it granted Defendants' request for reexamination and rejected claims 1-9, 11-20, 22, 29-36, 38 and 43-45 of the '352 patent. (Hughes Certification Ex. 24.) The claims that Mars had specifically alleged that Defendants had infringed were among those rejected.[1] On August 3, 2007, the Patent Office issued another *Inter Partes* Reexamination Communication, again rejecting the claims identified by Mars as those Defendants infringed. (Id. Ex. 32.) The parties then agreed to a stay of the litigation with respect to the '352 patent, and Magistrate Judge Joel Schneider issued an order on September 30, 2008, which stated:

> IT IS . . . ORDERED that pursuant to Fed. R. Civ. P. 21 all claims involving the '352 patent are severed from this litigation and shall be administratively stayed and dismissed without prejudice until such time as the parties request the Court to reactivate the litigation involving the '352 patent. If the '352 litigation is restored to the active docket the case shall be given a new docket number.

(Id. Ex 34.)

**B. The '589 Patent**

In October of 2008, Plaintiffs produced, for the first time, an agreement, dated January 1, 1996, in which Mars transferred to MEI its entire interest in intellectual property relating to currency note acceptors, coin exchange mechanisms and other electronics products manufactured and sold by Mars and MEI ("the 1996 agreement"). Mars had not mentioned the 1996 agreement in its January 2006 response to Defendants' First Set of Interrogatories, which had specifically asked Mars to "[i]dentify each agreement, covenant or license as between MARS, INCORPORATED and any other legal entity including but not limited to Mars Electronics

---

[1] In its Second Supplemental Response to Defendant JCM American Corp.'s First and Second Set of Interrogatories, Mars stated that "JCM infringes at least claims 1-4, 8, 9, 13, 15, 29, 32, 33, and 43 of the '352 patent." (Hughes Certification Ex. 17.)

International, Inc., relating to the Patents-in-Suit." (Hughes Certification Ex. 9 No. 5.) Furthermore, Mars did not produce the 1996 agreement in its January 2006 response to Defendants' First Set of Requests for the Production of Documents and Things, which had specifically requested "[a]ll documents relating to all licenses, contracts, royalty arrangements or other agreements made by MARS and any other person or company related to the Patents-in-Suit." (Id. Ex. 11 No. 3)

The 1996 agreement figured prominently in an earlier patent infringement suit filed by Mars and MEI, Mars v. Coin Acceptors, Inc., No. 90-cv-49 (D.N.J.). In Coin Acceptors, Mars and MEI were represented by McCarter & English and Fish & Richardson, as they are in this case. A May 14, 2002 declaration of a Mars employee described the 1996 agreement.[2] Mars' December 28, 2005 motion to amend its complaint to add MEI as a co-plaintiff also described the 1996 agreement. Further, the 1996 agreement was attached to a motion for summary judgment filed by Coin Acceptors on December 22, 2006. Ultimately, on June 2, 2008, the Federal Circuit Court of Appeals held that the 1996 agreement transferred ownership in the intellectual property at issue from Mars to MEI, and therefore that Mars did not have standing after December 31, 1995. Mars, Inc. v. Coin Acceptors, Inc., 527 F.3d 1359, 1370 (Fed. Cir. 2008), mandate recalled and amended by, 557 F.3d 1377 (Fed. Cir. 2009).

**C. December 23 Dismissal and Order Awarding Defendants Fees and Costs**

After Plaintiffs produced the 1996 agreement, Defendants moved to dismiss the case based on Mars' lack of standing to sue. Defendants also sought sanctions. On December 23,

---

[2] Mars took the position that this agreement transferred the beneficial interest in, but not legal title to, the intellectual property.

4

2008, the Court granted Defendants' motion in part, dismissing the case without prejudice based on Mars' lack of standing and determining that "Defendants shall be entitled to the attorney's fees and costs associated with bringing their motion and the discovery costs incurred as a result of Plaintiffs' delay in producing the 1996 agreement." The Court limited the discovery costs recoverable to those that "could have been avoided had Plaintiffs timely produced the 1996 agreement." Finally, the Court held that "should MEI choose to file a new complaint, the discovery that has already taken place shall carry over to the new action." (Dkt No. 170.)

MEI filed a new complaint on January 23, 2009, alleging that JCM American Corp. and Japan Cash Machine Co., Ltd. have been and are still infringing the '589 patent. See MEI, Inc. v. JCM American Corp., No. 09-cv-351 (D.N.J.).

## II.  FEES AND COSTS REQUESTED PURSUANT TO DECEMBER 23 ORDER

Defendants seek a total of $1,555,938.03 in fees and costs pursuant to the Court's December 23 order. These fees and costs can be divided into four categories: (1) attorney's fees of $57,777.00 associated with Defendants' opposition to Mars' Rule 25(c) motion; (2) attorney's fees of $64,676.00 associated with the motion to dismiss; (3) attorney's fees of $1,140,170.00 associated with discovery; and (4) costs of $137,104.00 and actual expenses of $156,211.03.

### A.  Fees Related to Rule 25(c) Motion

The Court finds that Defendants are not entitled to attorney's fees associated with their opposition to Mars' Rule 25(c) motion. The Court is not persuaded that Defendants would have avoided these fees if Mars had produced the 1996 Agreement earlier.

At the time Mars brought the Rule 25(c) motion, it had taken the position in the Coinco case that the 1996 Agreement transferred the beneficial interest in, but not legal title to, the

intellectual property. Thus, even if the 1996 Agreement had been produced in this case, Mars would likely have argued that it did not transfer legal title to the '589 patent. Mars would still have argued that the 2006 agreement transferred the legal interest in the '589 patent to MEI, and would have sought to substitute MEI for itself based on the 2006 agreement. Defendants therefore would still have incurred attorney's fees in opposing Mars' Rule 25(c) motion, even if the substance of their opposition might have been different.

Moreover, at the time Mars filed its 25(c) motion, the '352 patent was still at issue in this case. There has been no suggestion that the 1996 agreement transferred ownership of the '352 patent, which was issued in 2004 and for which an application was filed in 2001. Therefore, Mars' position that it owned the '352 patent at the time it filed suit and that it transferred its interest in the '352 patent pursuant to the 2006 agreement would not have been affected by the production of the 1996 Agreement. Mars would still have sought to substitute MEI for itself in 2006.

In sum, the Court will not award Defendants the $57,777.00 in attorney's fees they claim to have incurred in opposing Mars' Rule 25(c) motion.

### B. Fees Associated with Motion to Dismiss

Defendants seek a total $64,676.00 in attorney's fees incurred in relation to the motion to dismiss.[3] Plaintiffs argue that $4,170.00 of this amount should not be permitted because it was

---

[3] Defendants also argue that they are entitled to attorney's fees associated with an earlier motion to dismiss. This earlier motion was not actually a motion, but rather was an argument Defendants made in opposition to Mars' Rule 25(c) Motion. (See Defs.' Reply Brief at 5-6; Hughes Reply Certification Ex. 68.) Fees incurred in relation to making this argument are not recoverable under the Court's December 2008 Order. They are not fees associated with the November 2008 motion to dismiss and they are not fees that could have been avoided if Mars had produced the 1996 agreement earlier. Defendants argue that their earlier "motion" to dismiss

not related to the motion to dismiss.

First, Plaintiffs dispute a billing entry of $2,640.00 (4.40 hours) for David Abel, for which the description is "Discovery; responded to e-mail on document production; revise reply brief regarding motion to dismiss."  (Supplemental Declaration of David B. Abel Ex. A, 12/3/08 Invoice, at 3.)  For other entries that related in part to the motion to dismiss, Abel had apportioned the time among the various tasks; however, for the entry at issue, Abel did not indicate what portion of the 4.40 hours was spent on the reply brief.  The Court will resolve this issue by awarding Defendants one-half of the amount requested, or $1,320.00.

Second, Plaintiffs dispute a billing entry of $1,530.00 (4.5 hours) for William Hughes.  The description for this entry is "Review documents relating to BNA and BSN sales data and design documents; review transcripts for MEI efforts to produce documents; research whether court can compel disclosure or inspection in Switzerland; receive and review court order on judicial notice."  (Supplemental Certification of William Hughes Ex. 6A, Entry for 12/18/08.)  While it is plausible that most of these tasks are related to the motion to dismiss, the Court is unable to divine how reviewing the court order on judicial notice is related to the motion to dismiss.  The process of reviewing the court order could not have taken more than a few minutes.  Therefore, the Court will subtract $68.00 from this entry, and award $1,462.00.

In sum, the Court will award Defendants $63,288.00 in attorney's fees incurred in relation to the motion to dismiss.

---

would have been granted if the 1996 agreement had been produced earlier; they do not argue that costs associated with the "motion" would have been avoided.

No part of the $64,676.00 Defendants request for the motion to dismiss, however, appears to be related to the earlier "motion."

### C. Discovery

Defendants seek $1,140,170.00 in attorney's fees related to discovery. This amount represents the entire amount of attorney's fees related to discovery since January 2006. Defendants do not, as this Court's December 23 Order required, limit their request to fees associated with discovery that could have been avoided if Mars had produced the 1996 Agreement in a timely manner. Any discovery that will be used in the case brought by MEI is not discovery that could have been avoided. Because it is not possible for the Court to identify which attorney's fees fall within the scope of its December Order, Defendants' request for fees related to discovery will be denied without prejudice at this time. Defendants may be better able to identify which discovery could have been avoided at the conclusion of the new case. They may request discovery fees associated with the December 23 Order at that time.

### D. Costs and Actual Expenses

Defendants appear to seek all costs and actual expenses incurred in this lawsuit. (See Defs.' Brief in Support of Application for Fees and Motion for an Exceptional Case at 37-39.)[4] However, pursuant to this Court's December 23, 2008 Order, Defendants may recover only those amounts that could have been saved if Mars had produced the 1996 Agreement earlier. Therefore, any costs for items that may be used in the suit brought by MEI are not recoverable pursuant to this Court's December 23 Order. As the Court is unable to determine which portion of the costs and actual expenses requested are within the scope of the Court's Order, Defendants' request for costs and actual expenses will be denied without prejudice.

---

[4] Defendants argue that they are entitled to these amounts pursuant to both the Court's December 23 Order and 35 U.S.C. § 285.

**III. EXCEPTIONAL CASE**

In addition to seeking fees and costs in accordance with the Court's December 23 Opinion and Order, Defendants seek an exceptional case determination to recover all fees and costs associated with the defense in this case, an amount totaling $2,986,553.83.  The Court finds that Defendants are not entitled to fees and costs pursuant to the exceptional case provision of the patent statute because they are not a prevailing party with respect to either the '589 or the '352 patent.

The patent statute provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285 (2006).  "[T]o be a prevailing party, one must receive at least some relief on the merits, which alters . . . the legal relationship of the parties."  Inland Steel Co. v. LTV Steel Co., 364 F.3d 1318, 1320 (Fed. Cir. 2004) (quoting Former Employees of Motorola Ceramic Prods. v. United States, 336 F.3d 1360, 1364 (Fed. Cir. 2003) (internal quotation marks omitted)).  Moreover, "a judicial decree must exist to have a prevailing party."  John M. Skenyon et al., Patent Damages Law and Practice, § 4:30 (2008); see also Akers v. Nicholson, 409 F.3d 1356, 1359 (Fed. Cir. 2005) ("Prevailing party status requires some judicial action that changes the legal relationship between the parties on the merits of the claim.  In other words, to prevail, a party must have received a judicial *imprimatur* tantamount to a judgment in favor of that party on the merits of the original claim.")

**A. The '589 Patent**

Defendants are not a prevailing party with respect to the '589 patent.  This case was dismissed without prejudice based on Mars' lack of standing.  This decision was not based on the merits of the case.  See H.R. Techs., Inc. v. Astechnologies, Inc., 275 F.3d 1378, 1384 (Fed. Cir.

9

2002) (noting that "lack of standing is not an issue that goes to the merits of the underlying patent issues"); Cutler v. Hayes, 818 F.2d 879, 888 (D.C. Cir. 1987) ("Standing ranks amongst those questions of jurisdiction and justiciability not involving an adjudication on the merits, whose disposition will not bar relitigation of the cause of action originally asserted, but may preclude, or collaterally estop, relitigation of the precise issues of jurisdiction adjudicated."). Because Defendants did not receive any relief on the merits, they are not entitled to attorney fees for an exceptional case.[5]

### B. The '352 Patent

Defendants argue that they are a prevailing party with respect to the '352 patent because the U.S. Patent and Trademark Office invalidated the claims Plaintiffs alleged Defendants infringed. However, Defendants cannot be a prevailing party because they lack the requisite "judicial imprimatur." See Akers, 409 F.3d at 1359.

Defendants cite Inland Steel in support of their argument that they are a prevailing party with respect to the '352 patent because of their success before the Patent Office. However, Inland Steel is distinguishable from this case because the defendant in Inland Steel moved the district court to reopen the case and enter judgment on its invalidity counterclaims after the

---

[5] Defendants argue that they obtained relief based on the merits because "the legal sufficiency of the facts which determine jurisdiction is a question on the merits." (Defs.' Reply Brief at 11 n.12.) The cases cited by Defendants are distinguishable from this case because they do not involve dismissals based on lack of standing. See Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried Employees, 974 F.2d 391, 397-98 (3d Cir. 1992) (finding dismissal of ERISA case based on lack of employee benefits plan was mislabeled as dismissal based on subject matter jurisdiction because existence of plan is "integral to the merits of a claim for benefits under [the relevant ERISA provision]"); Boyle v. Governor's Veterans Outreach & Assistance Ctr., 925 F.2d 71, 74 (3d Cir. 1991) (finding that "the requirement in section 1983 of state action is not a question of jurisdiction, but rather is integral to the determination of the merits of the claim").

Patent Office had determined that the patents at issue were invalid. 364 F.3d at 1319. It was the district court's order dismissing the case with prejudice in favor of the defendant that made the defendant a prevailing party. Id. at 1320.[6]

Here, by contrast, the claims related to the '352 patent were dismissed without prejudice. The Court has not yet entered judgment in the case. Therefore, the judicial action necessary to make defendant a prevailing party is lacking.

**IV.  MOTION TO STRIKE DECLARATION OF JOY STANTON**

Defendants have moved to strike the declaration of Joy Stanton, which was submitted by Plaintiffs in support of their Opposition to Defendants' Application for Fees and Motion for Exceptional Case. Stanton, an attorney at the law firm of Fish & Richardson P.C., reviewed the declarations submitted by Defendants' counsel and marked certain billing entries as unrelated to the Application for Fees or Motion for Exceptional Case. Defendants object to Stanton's Declaration, arguing that Stanton lacked personal knowledge and was not qualified to give expert testimony.

Because the Court denied Defendants' Motion for Exceptional Case in its entirety, the Court did not have reason to consult Stanton's Declaration with regard to which billing entries were relevant to that motion. In addition, in reviewing Defendants' Application for Fees, the Court made its own conclusions about which billing entries fell within the scope of its December 23 Order. Therefore Defendants' Motion to Strike the Declaration of Joy Stanton will be denied as moot.

---

[6] In addition, the Patent Office's decision had been affirmed by the Court of Appeals for the Federal Circuit. See id. at 1319. Here, both parties have appealed the Patent Office's action, and therefore the Patent Office's decision may not be final.

## V. RULE 11 SANCTIONS

Defendants have also filed a Rule 11 motion, seeking a sanction of at least the amount of fees and costs they incurred after the 1996 Agreement was produced. Defendants have already been awarded fees and costs, and have failed to show how the sanctions they seek pursuant to Rule 11 differ from the sanctions the Court has already ordered. Therefore, the Court will deny Defendants' Rule 11 Motion. Cf. Metrocorps, Inc. v. Eastern Mass. Jr. Drum & Bugle Corps Ass'n, 912 F.2d 1, 3 (1st Cir. 1990) (instructing that district court should consider request for costs and fees pursuant to Rule 11 only if it did not award costs and fees under Rule 37); Lieb v. Topstone Indus., Inc., 788 F.2d 151, 158 (3d Cir. 1986) ("Although it is possible that the Copyright Act and Rule 11 may in some circumstances apply to identical conduct, it should be understood that there should be no duplication of any recovery for counsel fees.")

## VI. CONCLUSION

For the foregoing reasons, Defendants shall be awarded $63,288.00 in attorney's fees pursuant to the Court's December 23, 2008 Order. Defendants' request for fees related to their opposition to Mars' Rule 25(c) motion is denied. Defendants' requests for attorney's fees associated with discovery, costs and actual expenses are denied without prejudice. Defendants' Motion for Exceptional Case, Motion to Strike the Declaration of Joy M. Stanton, and Motion for Rule 11 Sanctions are denied. An accompanying Order shall issue today.


Dated:   7-30-09                                   /s/ Robert B. Kugler
                                                  ROBERT B. KUGLER
                                                  United States District Judge